**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| MICHAEL D. VITALI, | No. ED CV 15-2655-PLA |
| Plaintiff, | **MEMORANDUM OPINION AND ORDER** |
| v. | |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on December 30, 2015, seeking review of the Commissioner's denial of his application for Disability Insurance Benefits ("DIB"). The parties filed Consents to proceed before the undersigned Magistrate Judge on January 25, 2016, and January 26, 2016. Pursuant to the Court's Order, the parties filed a Joint Submission on September 6, 2016, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Submission under submission without oral argument.

/

/

## II.

## **BACKGROUND**

Plaintiff was born on June 6, 1959.  [Administrative Record ("AR") at 106, 603.]  He has past relevant work experience as a driver, sales route.  [AR at 603, 631, 695.]

On August 25, 2010, plaintiff filed an application for a period of disability and DIB alleging that he has been unable to work since October 3, 2003.  [AR at 106-07, 593.]  After his application was denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ").  [AR at 69, 593.]  A hearing was held on August 14, 2012, at which time plaintiff appeared represented by an attorney, and testified on his own behalf ("2012 Hearing").  [AR at 678-98.]  A vocational expert ("VE") also testified.  [AR at 694-97.]  At the 2012 Hearing, plaintiff amended his alleged onset date to December 30, 2008.  [AR at 593, 680-81.] On August 29, 2012, the ALJ issued a decision concluding that plaintiff was not under a disability from December 30, 2008, the alleged onset date, through December 31, 2008, the date last insured ("2012 Decision").  [AR at 624-33.]  Plaintiff requested review of the ALJ's decision by the Appeals Council, and review was denied.  [AR at 1-5, 7-9.]  Plaintiff filed an action in this Court and, on October 2, 2014, this Court reversed the decision of the Commissioner and remanded the matter for further proceedings.  [AR at 655-72.]  On July 22, 2015, another hearing was held, before a different ALJ, at which plaintiff appeared represented by an attorney and again testified on his own behalf ("2015 Hearing").  [AR at 611-20.]  A different VE also testified.  [AR at 618-19.] On October 21, 2015, the ALJ issued a decision concluding that plaintiff was not under a disability from October 3, 2003, the alleged onset date,[1] through December 31, 2008, the date last insured ("2015 Decision").  [AR at 593-604.]

/

/

---

[1]    As previously noted, at the 2012 Hearing, plaintiff amended his alleged onset date to December 30, 2008.  [AR at 593, 680-81.]  At the 2015 Hearing, it appears that because the date last insured was December 31, 2008 [AR at 595], and in order to receive benefits plaintiff must have been disabled on or before that date [see AR at 596], the new ALJ decided to use October 3, 2003, plaintiff's last day worked, as the date of onset.  [See AR at 619.]

**III.**

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (citation and internal quotation marks omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (same).  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (citation omitted); see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (citation and internal quotation marks omitted).  "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan, 528 F.3d at 1198 (citation and internal quotation marks omitted); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.") (citation omitted).

**IV.**

**THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at

least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

## A.    THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995), as amended April 9, 1996.  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id.  If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his  past work; if so, the claimant is not disabled and the claim is denied.  Id.  The claimant has the burden of proving that he is unable to perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a prima facie case of disability is established.  Id.  The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy.  Id.  The determination of this issue comprises the fifth and final step in the sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity during the period from his alleged onset date of October 3, 2003, through his date last insured of December 31, 2008.  [AR at 596.]  At step two, the ALJ concluded that through the date last insured, plaintiff had the severe impairment of degenerative disc disease of the lumbar spine.  [Id.] He also determined that although plaintiff had a "possible mood disorder, it did not cause more than minimal limitations in [plaintiff's] ability to perform basic mental work activities and is therefore non-severe."  [Id.]  At step three, the ALJ determined that, through the date last insured, plaintiff did not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing.  [AR at 597.]  The ALJ further found that, through the date last insured, plaintiff retained the residual functional capacity ("RFC")[2] to perform light work as defined in 20 C.F.R. § 404.1567(b),[3] as follows:

> [Plaintiff] was able to lift and/or carry 20 pounds occasionally, 10 pounds frequently. He could stand and/or walk 6 hours total in an 8 hour day and sit 6 hours total in an 8 hour day.  He could occasionally climb stairs, but was precluded from climbing ladders, ropes, or scaffolds.  He could occasionally balance, stoop, kneel, crouch, and crawl.

[AR at 598.]  At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that, through the date last insured, plaintiff was unable to perform his past relevant work as a

_____

[2]    RFC is what a claimant can still do despite existing exertional and nonexertional limitations.  See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[3]    "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

driver, sales route.[4] [AR at 603.] At step five, based on plaintiff's RFC, vocational factors, and the testimony of the VE at the 2012 Hearing, the ALJ found that, through the date last insured, there were jobs existing in significant numbers in the national economy that plaintiff can perform, including work as a "[s]mall products assembler" (Dictionary of Occupational Titles ("DOT") No. 706.684-022), and "office helper" (DOT No. 239.567-010). [AR at 604, 694-97.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of October 3, 2003, through December 31, 2008, the date last insured. [AR at 604.]

**V.**

**THE ALJ'S DECISION**

Plaintiff contends that the ALJ erred when he: (1) rejected the opinions of plaintiff's treating physician, Daniel A. Capen, M.D.; and (2) rejected plaintiff's subjective symptom testimony. [Joint Submission ("JS") at 5.] As set forth below, the Court agrees with plaintiff and remands for payment of benefits.

**A.    SUBJECTIVE SYMPTOM TESTIMONY**

Plaintiff contends the ALJ failed to articulate legally sufficient reasons for rejecting plaintiff's subjective symptom testimony. [JS at 18-24, 30-32.]

In the 2015 Decision, the ALJ noted the following subjective symptom testimony:

When [plaintiff] first filed for benefits, he alleged being disabled and unable to work due to back and neck pain and depression. When asked at the [2012] hearing before Judge Dietterle if he had sustained an injury at work he testified "no." At the prior hearing, he testified that after the hardware was removed from his back in 2007 he could sit for 20 minutes and could stand for 30 minutes. He could walk for about

_____

[4]    At the 2012 Hearing, the VE testified that plaintiff's past work was as a "driver, sales route" (DOT No. 292.353-010). [AR at 695.] At the 2015 Hearing, a different VE testified that plaintiff's past relevant work was as a "delivery truck driver" (DOT No. 905.663-014). [AR at 619.] The ALJ provides no explanation in the 2015 Decision as to why he determined plaintiff's past work was a "driver, sales route," although the record reflects that he did not ask the VE at the 2015 Hearing any hypotheticals [see AR at 618-19], and it appears, therefore, that in making his determination of non-disability he relied on the testimony of the VE from the 2012 Hearing. [See AR at 603, 695-98.]

1    a block and could only lift 10 to 15 pounds.  He used a cane only for the first 6
     months after the second surgery.  He stated he had problems dressing and bathing
2    and putting on his socks.  However, he could wash a few dishes and vacuum.  He
     stated he [was] able to drive after the second surgery but had problems driving for
3    long distances.  He stated he had filed for Workers['] Compensation, but had not
     received a settlement as of the first hearing.  [Plaintiff] testified that he first noticed
4    low back pain in 2003 and had a lumbar fusion at the L5 level in April 2005.
     Following the fusion surgery, a second surgery was performed on May 7, 2007 for
5    hardware removal.  He testified that despite surgical intervention, pain symptoms
     were "the same as before the hardware was removed" and that he received leg
6    pain after the hardware surgery removal.  Although he testified that he underwent
     a third surgery in February 23, 2011, this procedure occurred years after the date
7    last insured.  . . . He also testified his condition remained the same as it was in
     2008.  He stated the most recent surgery was done because the disk above the
8    fusion "started" to deteriorate according to the doctor.

9    [AR at 598-99 (citations omitted).]

10        "To determine whether a claimant's testimony regarding subjective pain or symptoms is

11   credible, an ALJ must engage in a two-step analysis."[5]  Lingenfelter v. Astrue, 504 F.3d 1028,

12   1035-36 (9th Cir. 2007).  "First, the ALJ must determine whether the claimant has presented

13   objective medical evidence of an underlying impairment 'which could reasonably be expected to

14   produce the pain or other symptoms alleged.'"  Id. at 1036 (quoting Bunnell v. Sullivan, 947 F.2d

15   341, 344 (9th Cir. 1991) (en banc)).  Second, if the claimant meets the first test, the ALJ may

16   reject the claimant's testimony about the severity of his symptoms "only upon (1) finding evidence

17   of malingering, or (2) expressing clear and convincing reasons for doing so."  Benton v. Barnhart,

18   331 F.3d 1030, 1040 (9th Cir. 2003).  Factors to be considered in weighing a claimant's credibility

19   _____

20        [5]    The Court notes that pursuant to Social Security Ruling ("SSR") 16-3p, the ALJ is no longer
     tasked with making an overarching credibility determination and instead must assess whether the
21   claimant's subjective symptom statements are consistent with the record as a whole.  See SSR
     16-3p, 2016 WL 1119029 (Mar. 16, 2016) (superseding Soc. Sec. Ruling 96-7p); see also Holohan
22   v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citations omitted) ("SSRs do not have the
     force of law.  However, because they represent the Commissioner's interpretation of the agency's
23   regulations, we give them some deference.  We will not defer to SSRs if they are inconsistent with
     the statute or regulations.").  Here, the ALJ's 2015 Decision was issued before March 16, 2016,
24   when SSR 16-3p became effective, and there is no binding precedent interpreting this new ruling
     including whether it applies retroactively.  Compare Ashlock v. Colvin, 2016 WL 3438490, at *5
25   n.1 (W.D. Wash. June 22, 2016) (declining to apply SSR 16-3p to an ALJ decision issued prior to
     the effective date), with Lockwood v. Colvin, 2016 WL 2622325, at *3 n.1 (N.D. Ill. May 9, 2016)
26   (applying SSR 16-3p retroactively to a 2013 ALJ decision).  Because the ALJ's findings regarding
     this issue fail to pass muster irrespective of which standard governs, the Court need not resolve
27   the retroactivity issue.

28

1   include:  (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's

2   testimony or between the claimant's testimony and his conduct; (3) the claimant's daily activities;

3   (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the

4   nature, severity, and effect of the symptoms of which the claimant complains.  See Thomas v.

5   Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also Ghanim v. Colvin, 763 F.3d 1154, 1163

6   (9th Cir. 2014); 20 C.F.R. § 404.1529(c).

7          Where, as here, plaintiff has presented evidence of an underlying impairment, and the ALJ

8   did not find "affirmative evidence" of malingering [see generally AR at 598-603], the ALJ's reasons

9   for rejecting a claimant's credibility must be specific, clear and convincing.  Burrell v. Colvin, 775

10   F.3d 1133, 1136 (9th Cir. 2014) (citing Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012));

11   Brown-Hunter v. Colvin, 806 F.3d 487, 488-89 (9th Cir. 2015).  "General findings [regarding a

12   claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible

13   and what evidence undermines the claimant's complaints."  Burrell, 775 F.3d at 1138 (quoting

14   Lester, 81 F.3d at 834) (quotation marks omitted).  The ALJ's findings "'must be sufficiently

15   specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony

16   on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'"

17   Brown-Hunter, 806 F.3d at 493 (quoting Bunnell, 947 F.2d at 345-46).  A "reviewing court should

18   not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's

19   allegations of disabling pain."  Bunnell, 947 F.2d at 346.  As such, an "implicit" finding that a

20   plaintiff's testimony is not credible is insufficient.  Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir.

21   1990) (per curiam).

22          Here, in finding plaintiff's subjective symptom testimony "only partially credible" [AR at 599],

23   the ALJ noted the following issues:  (1) inconsistencies in the record detract from plaintiff's

24   credibility; (2) the objective medical evidence prior to the date last insured of December 31, 2008,

25   "further undermines" plaintiff's credibility; (3) plaintiff's reported activities of daily living are

26   "generally inconsistent with someone who is experiencing constant pain"; and (4) plaintiff's work

27   history "further detracts from his credibility."  [AR at 600.]  The Court finds none of these reasons

28

1  to be legally sufficient.

2

3      **1.      Inconsistencies in the Record**

4          **a.      No Injury at Work**

5          The first "inconsistency" noted by the ALJ was that at the 2012 Hearing plaintiff "testified

6  that he did <u>not</u> have an injury at work, [but] he also testified he applied for Worker's [sic]

7  Compensation benefits." [AR at 599.]  A review of the 2012 Hearing record shows the following

8  colloquy occurred:

9          [ALJ:]  . . . While you were working did you have any type of injury or injuries?

10         [Plaintiff:]  While I was working, no.

11         [ALJ:]  Okay.  You eventually had difficulty with your back, correct?

12         [Plaintiff:]  Yes.  It started about six straight months before prior and --

13         [ALJ:]  Prior to?

14         [Plaintiff:]  Prior to stopping --

15         [ALJ:]  Work?

16         [Plaintiff:]  -- work, yes.

17  [AR at 685.]  Plaintiff also testified that he would be "driving for 40 miles or driving -- and then by

18  the time [he] sat and rest, the pain would go away and then it would come back. . . . But it got to

19  the point that the pain was just unbearable." [Id.]

20         The Court finds that the original question asked by the ALJ regarding work injuries, and

21  thus the resulting response from plaintiff, was ambiguous.  That is, plaintiff may have thought the

22  ALJ was asking about any specific or discrete injury plaintiff experienced while working, such as

23  a slip and fall incident.  Indeed, Dr. Krell's October 2005 report reflects that plaintiff reported that

24  he had been "injured on the job on July 10, 2003, that includes a period of continuous trauma

25  when he performed heavy lifting and pulling of pallet jacks.  He noted pain for approximately one

26  year.  His right leg went numb on July 10, 2003.  He reports to have been placed on modified duty

27  and stopped working on October 3, 2003, due to symptoms of low back pain and occasional pain

28

1    radiating into his right leg." [AR at 235.] As such, plaintiff's testimony that he did not have any

2    *specific* injury while at work is not inconsistent with his filing a Workers' Compensation claim.

3    Moreover, notwithstanding his response to this question, plaintiff also clearly explained that he

4    started having difficulty with his back six months before he stopped working on October 3, 2003,

5    and admitted he had filed for Workers' Compensation.  [Id.]

6         This was not a specific, clear and convincing reason for discounting plaintiff's subjective

7    symptom testimony.

8

9              **b.    Amended Date of Onset**

10        Next, the ALJ pointed out that although plaintiff "originally alleged being disabled and

11   unable to work since 2003, at the [2012] hearing before [the prior ALJ] he requested to amend the

12   alleged onset date to 5 years later."  [AR at 599.]

13        Specifically, at the 2012 Hearing, the following discussion took place:

14        ATTY:  . . . I have spoken with [plaintiff] and we could amend the onset date to
          December 30, 2008, which would be close to six months from age 50, where we
15        could, where there may be flexibility to do a framework decision and grid him out
          under the Medical-Vocational Guidelines.  He has three back surgeries and medical
16        source statements indicating that he's sedentary, and some of the DDS notes
          indicate that [he] might be sed[entary], particularly 8F-3.
17
          ALJ:  But was he sedentary prior to the date last insured?
18
          ATTY:  We don't have any RFCs prior, but it's a failed back case.  He did have leg
19        pain and positive nerve conduction tests.

20        ALJ:  When did he have surgery?

21        ATTY:  He had a surgery.  He had two surgeries.  He had the first surgery on May
          30, 2005, and he had a second surgery in May of 2007 for hardware removal.
22
          ALJ:  Okay.
23
          ATTY:  So it's been ongoing failed back syndrome problem.
24
          ALJ:  And he would grid at sedentary?
25
          ATTY:  If we do a framework decision because his past work is, from what I could
26        tell, group sales, which is medium.

27        ALJ:  Okay.

28

ATTY:  Medium per the <u>DOT</u> and as performed.  As he describes it, it was a[] little heavier than that, but we would go with medium so he would grid out under a framework decision.

ALJ:  So do you want to amend the onset date?

ATTY:  Yeah.  We would be willing to do that.

ALJ:  But there is no guarantee as far as what their [sic] decision is going to be even if we --

ATTY:  Well, it's not really going to make a difference in terms of payment of benefits anyway.

ALJ: Right.  Okay, yeah.  All right.  So we'll amend the onset to December 30th of 2008.

[AR at 680-82.]  Based on the foregoing, it appears that plaintiff's onset date was amended based on advice of counsel, and that the change was a strategic decision relating to the application of the Medical-Vocational Guidelines as they related to his age in 2008.  The ALJ offered no explanation as to how this change reflected on plaintiff's credibility.

This was not a specific, clear and convincing reason for discounting plaintiff's subjective symptom testimony.

### c.   Radiating Leg Pain and Numbness

The ALJ stated that plaintiff's testimony was inconsistent because although he "testified that numbness down his leg was a reason he was unable to work, treatment notes from July 8, 2009, after [plaintiff's] date last insured, report [that plaintiff] denied radiating pain from his low back down his legs and denied numbness of his lower extremities."  [AR at 599 (citing AR at 220).]  However, although plaintiff may not have reported radiating pain when he was examined on July 8, 2009, such pain was mentioned in numerous other reports.  For instance, the October 3, 2003, report of plaintiff's treating physician, Dr. Capen, indicated that plaintiff was complaining of "aching-to-sharp pain in the low back which radiates down the right lower extremity" and he "has weakness in the right leg."  [AR at 184.]  In February, August, September, and December 2008, plaintiff reported radiating pain and/or sciatica [AR at 286, 292, 304], and in January, February,

1   and July 2010, he again reported such pain. [AR at 249, 254, 574.]  In November and December

2   2008, and in January and February 2010, his gait was reported to be unstable or antalgic.  [AR

3   at 249-50, 254, 286.]  Thus, both before and after his December 31, 2008, date last insured,

4   plaintiff complained of pain radiating to his leg.

5        Relying on one specific examination in the record where plaintiff denied having radiating

6   pain,[6] especially in light of the record as a whole, was not a specific, clear and convincing reason

7   for discounting plaintiff's subjective symptom testimony.

8

9                    **d.    Plaintiff's Ability to Walk**

10       Finally, the ALJ found plaintiff's testimony at the 2012 Hearing that "he could walk a block,"

11  inconsistent with plaintiff's statements "on the function report [where he] reported both taking 10

12  minute and 20 minute daily walks." [AR at 599.]  The ALJ misstates the record.  Specifically, at

13  the 2012 Hearing, the previous ALJ asked plaintiff to describe the physical difficulties he was

14  having "*prior to 2008*." [AR at 687 (emphasis added).]  In response, plaintiff testified he "could

15  walk about a block, block and a half, and then the pain in the legs started and then by then [he]

16  would have to just sit down and rest." [AR at 687-88.]  In the Function Report - Adult ("Report")

17  completed by plaintiff on November 23, *2010* -- almost two years *after* December 2008 -- plaintiff

18  reported that during the day he takes a "10 minute walk." [AR at 121.]  In that same Report, in

19  response to the question "How far *can you walk* before needing to rest," plaintiff responded "15

20  to 20 minutes," and indicated that he would have to rest 15 minutes before he could resume

21  walking. [AR at 126 (emphasis added).]  In other words, although in 2010 plaintiff reported taking

22  a daily 10 minute walk (presumably without needing to rest), he also testified that prior to

23  December 2008 he could walk a "block, block and a half" before feeling pain.  Plaintiff never

24  reported that he took "10 minute <u>and</u> 20 minute daily walks" prior to 2008 or even as of November

25

26       [6]    In fact, plaintiff made this statement to Dr. Krell, the Agreed Medical Examiner for his
    Workers' Compensation claim. [AR at 213.]  To the extent plaintiff's denial of radiating pain could
27  be seen as going *against* his interest in his Workers' Compensation action, it tends to bolster his
    credibility, not detract from it.
28

23, 2010.  Plaintiff's 2012 Hearing testimony that prior to 2008 he could walk "about a block, block and half" before needing to rest, is completely unrelated to plaintiff's statement in 2010 that he walks 10 minutes a day.  Moreover, even if these two statements are "related," there does not appear to be any obvious inconsistency between walking a block to a block and a half, and walking for 10 minutes.

This was not a specific, clear and convincing reason for discounting plaintiff's subjective symptom testimony.

### 2.    Objective Medical Evidence

The ALJ also found that the objective medical evidence prior to December 31, 2008, "further undermines" plaintiff's credibility.  [AR at 599.]  In support, he stated the following:

> A[n] MRI from September 2, 2003, showed "no significant disc bulge or protrusion" and only "mild articular facet hypertrophy."  Notes from December 2007 from Dr. Capen reported that status/post removal of the hardware [plaintiff] claimed he was "doing well."  Treatment records from Dr. Kay Penn dated January 2008 reported only "mild" sciatica.  Workers['] Compensation notes relate an epidural injection given in May 2008 produced "moderate relief" of [plaintiff's] symptoms.  Although treatment notes observed some positive findings, including decreased range of motion in the lumbar spine, tenderness, para-lumbar spasm, and positive straight leg raise testing, Martin Krell, M.D., a neurosurgeon who was the qualified medical examiner reported in an evaluation on November 21, 2006, that [plaintiff] had "normal and equal motor strength in all 4 extremities" and [plaintiff's] sensation was intact to pin, touch and proprioception in all 4 extremities except for "slight" diffuse hypalgesia in the left lower leg.  In addition, Dr. Krell observed [plaintiff] walked *without ataxia or limp*.  An attending physician, Shirish Patel, MD, observed that all of [plaintiff's] neurological functions were "within normal limits" following his May 2007 surgery.  He further stated that he was status/post prior lumbar fusion with "routine" painful hardware, status post removal of the hardware. Daniel Capen, MD, [plaintiff's] treating physician, in notes from June 2008 reports [plaintiff] had his first lumbar epidural injection and stated "it helped him a lot."  His gait was reported to be "normal."  Katrina Babcock, DO observed that although [plaintiff] had decreased range of motion, his sensation appears "grossly intact."  Although he had an abnormal nerve conduction study, there was "no electrodiagnostic evidence of lumbar plexopathy, peripheral nerve entrapment or peripheral neuropathy."

[AR at 599-600 (citations omitted) (emphasis in original).]

While a lack of objective medical evidence supporting a plaintiff's subjective complaints cannot provide the <u>only</u> basis to reject a claimant's credibility (see Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)), it is one factor that an ALJ can consider in evaluating symptom

1    testimony.  See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical

2    evidence cannot form the sole basis for discounting pain testimony, it is a factor the ALJ can

3    consider in his credibility analysis."); accord Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir.

4    2001).  However, as the Ninth Circuit recently held, "an ALJ's 'vague allegation' that a claimant's

5    testimony is 'not consistent with the objective medical evidence,' without any 'specific finding in

6    support' of that conclusion, is insufficient." Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d

7    1090, 1103 (9th Cir. 2014)  (citation omitted).  The "ALJ must identify the testimony that was not

8    credible, and specify 'what evidence undermines the claimant's complaints.'" Id. (citation omitted);

9    Brown-Hunter, 806 F.3d at 493.

10        Here, the ALJ did not identify the testimony he found not credible and "link that testimony

11   to the particular parts of the record" supporting his non-credibility determination. Brown-Hunter,

12   806 F.3d at 494.  In short, "[t]his is not the sort of explanation or the kind of 'specific reasons' we

13   must have in order to review the ALJ's decision meaningfully, so that we may ensure that the

14   claimant's testimony was not arbitrarily discredited," nor can the error be found harmless. Id. at

15   493 (rejecting the Commissioner's argument that because the ALJ set out his RFC and

16   summarized the evidence supporting his determination, the Court can infer that the ALJ rejected

17   the plaintiff's testimony to the extent it conflicted with that medical evidence, because the ALJ

18   "never identified which testimony [he] found not credible, and never explained which evidence

19   contradicted that testimony") (citing Treichler, 775 F.3d at 1103, Burrell, 775 F.3d at 1138).

20        Plaintiff contends the ALJ relied on discrete treatment records that support his position

21   rather than considering the record as a whole. [JS at 22-23.] Plaintiff points to "objective evidence

22   of radiculopathy, loss of motion segment integrity due to an L5-S1 arthrodesis, and loss of relevant

23   Achilles reflexes and abnormal electromyographic findings," and specifically refers to Dr. Krell's

24   2005 and 2006 reports[7] [Id. (citing AR at 230, 243)], and a January 8, 2008, abnormal nerve

25

26        [7]    In his 2005 report, Dr. Krell also noted "three-quarter inch right calf atrophy and positive
     straight leg raising pain bilaterally," and that plaintiff ambulated "slowly without a limp." [AR at
27   245.] In his 2006 report, Dr. Krell's calf measurements reflected a one-half inch difference in the
                                                                                    (continued...)
28

conduction study and a September 24, 2008, abnormal electromyographyic study -- both prior to plaintiff's date last insured.  [JS at 23 (citing AR at 220, 223, 294, 456).]  He also notes a February 27, 2008, MRI that revealed that a "'broad-based disc protrusion . . . effaces the thecal sac, producing bilateral neural foraminal narrowing and encroachment of the right L2 and effacement of the left L2 exiting nerve root.'"  [Id. (citing AR at 430).]  Prior to the date last insured, on November 7, 2008, Dr. Capen reported that plaintiff's "lumbar spine is stiff and achy, with tenderness on palpation. He has very limited range of motion. There is a positive bilateral straight leg raise.  Tendon reflexes at the knees and ankles are normal.  [¶] There is weakness and instability with heel/toe walk attempts." [AR at 281.]  Dr. Capen also noted that plaintiff "is frustrated and miserable with the lumbar spine symptomatology . . . [and] is clearly getting worse. . . . Due to the patient's increasing pain, two injections were administered for symptomatic relief." [AR at 282.]  One month later, on December 12, 2008, and still prior to the date last insured, Dr. Capen stated that "[plaintiff] had developed a junctional level, has severe spinal discopathy, and responded only temporarily to lumbar blocks." [AR at 286; see also JS at 10, 23.]  Dr. Capen also stated, "we will hold off on the functional capacity evaluation. He needs surgical intervention." [AR at 286.]  Dr. Capen requested authorization for surgery, and stated that plaintiff "has suffered an injury that has left dysfunction, disability, and chronic pain.  The trials of rest, time off work, therapy, medications and all other conservative methods have failed.  This patient is faced with the choice of attempting to live with the pain or undergoing surgical intervention." [Id.]

As in the 2012 Decision, the ALJ here selectively relied on a few medical records to support his findings, and failed to mention the more restrictive findings and opinions of Dr. Capen and other treating physicians, which predate the date last insured. [See AR at 666; see also JS at 5-11 (plaintiff's discussion regarding the ALJ's rejection of Dr. Capen's opinions).]  Instead, the ALJ gave little weight to a June 29, 2015, opinion of Dr. Capen because Dr. Capen stated that the earliest date that his description of the symptoms and limitations applied was in "2009 following

---

<sup>7</sup>(...continued)
right calf, and positive straight leg raising pain bilaterally.  [AR at 229.]

the second [lumbar/sacral] surgery," and Dr. Capen's 2015 opinion finding generally sedentary restrictions is not supported by treatment records during the relevant time period.  [AR at 600.] In support, the ALJ noted Dr. Capen's statement in December 2007, after the removal of plaintiff's hardware, that plaintiff stated he was "doing well"; that Dr. Penn in January 2008 reported only "mild" sciatica; and that Dr. Krell in July 2009 observed that plaintiff denied any radiating pain or numbness in his lower extremities.  [AR at 600 (citing AR at 220, 267, 311, 312, 1132).]  The ALJ also gave little weight to Dr. Capen's March 4, 2011, opinion (an opinion also discussed by the previous ALJ), which he noted was "more than 2 years after the date last insured," as Dr. Capen appeared to have relied upon a treatment note that was only two weeks after plaintiff's fusion surgery, "well before the expected recovery time for such a procedure."  [AR at 601.]

As was true in the 2012 Decision, the ALJ here again cites only isolated bits and pieces from the same four medical sources as were cited in the previous decision to justify discounting plaintiff's subjective symptom testimony, and/or Dr. Capen's opinions:  Dr. Krell, Dr. Capen, Dr. Babcock, and Dr. Patel.  [See AR at 630, 668.]   For instance, in the 2012 Decision, the previous ALJ stated that Dr. Patel "observed that all of [plaintiff's] neurological functions were 'within normal limits' following his May 2007 surgery."  [AR at 630.]  In its 2014 Memorandum Opinion, the Court observed that the ALJ failed to explain "how this portion of Dr. Patel's observation is relevant to the overall credibility determination regarding plaintiff's pain testimony given that Dr. Patel simultaneously observed that plaintiff was on a device for pain control and apparently not fully ambulatory."  [AR at 668 (citing AR at 328).]  In the 2015 Decision, the ALJ again addressed Dr. Patel's statement, noting that Dr. Patel "observed that all of [plaintiff's] neurological functions were 'within normal limits' following his May 2007 surgery.  He further stated that he was status/post prior lumbar fusion with 'routine' painful hardware, status post removal of the hardware."  [AR at 599 (citations omitted).]  Merely adding another observation, as equally unrelated in any way to plaintiff's overall credibility as was Dr. Patel's first observation, does not render the 2015 Decision

1  any more legally sufficient than the 2012 Decision.[8]  Additionally, although plaintiff's February 2011

2  surgery took place *after* the date last insured, *prior* to that date Dr. Capen determined that such

3  surgery was necessary -- another fact ignored by the ALJ.  It also appears that before undergoing

4  surgery, plaintiff was required to obtain authorization -- further delaying the recommended surgery

5  beyond his date last insured.  Also ignored by the ALJ when he noted plaintiff experienced

6  "moderate relief" after a May 2008 epidural, is the fact that Dr. Capen later clearly stated that

7  plaintiff "responded only *temporarily* to lumbar blocks." [AR at 286 (emphasis added).]  In fact, the

8  ALJ in his 2015 Decision similarly ignored the Court's concerns with the 2012 Decision, and

9  committed the same legal errors.  [Compare AR at 668 with AR at 630 (2012 Decision) & 599

10  (2015 Decision).]

11      The Court finds that the ALJ's 2015 Decision regarding plaintiff's treating doctors' findings

12  and opinions and plaintiff's subjective symptom testimony is virtually indistinguishable from the

13  2012 Decision, which the Court found to be legally insufficient with respect to both these issues.

14  [AR at 655-72.]  The Court agrees with plaintiff that the ALJ here has improperly isolated portions

15  of the record in order to justify his conclusion that plaintiff was not disabled during the relevant time

16  period.  Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (ALJ "cannot reach a conclusion

_____

18  [8]   As discussed in the Court's 2014 Memorandum Opinion, and not addressed by the ALJ in his 2015 Decision [see AR at 599, 600], although Dr. Krell on July 8, 2009, observed that plaintiff

19  "denied any radiating pain . . . and numbness of his lower extremities," and that "motor strength and sensation were normal in both lower extremities" [AR at 220], Dr. Krell also diagnosed plaintiff

20  as having "residual neurological disability," and found that plaintiff had "[c]hronic low back pain with objective radiculopathies into both lower extremities," and "[l]oss of motion segment integrity due

21  to an L5-S1 arthrodesis.  Loss of relevant Achilles reflexes and abnormal electromyographic findings." [Id.]  He also noted "[e]vidence of residual bilateral lower extremity radiculopathy." [AR

22  at 223].  Similarly, the ALJ only cites a portion of Dr. Katrina Babcock's September 24, 2008, report, noting that "although [plaintiff] had decreased range of motion, his sensation appears

23  'grossly intact,'" and although plaintiff "had an abnormal nerve conduction study, there was 'no electrodiagnostic evidence of lumbar plexopathy, peripheral nerve entrapment or peripheral

24  neuropathy.'" [AR at 599-600.]  However, the ALJ fails to discuss any conclusion reached by Dr. Babcock as a result of her failure to find evidence of "lumbar plexopathy, peripheral nerve

25  entrapment or peripheral neuropathy."  Neither does he discuss the abnormal electomyographic study she references, or her findings of diffused demyelination of the "bilateral tibial motor" and

26  "right peroneal motor," and "chronic membrane irritability . . . consistent wit[h] subacute L4-L5 and

27  L5-S1 radiculopathy." [AR at 294.]

28

1  first, and then attempt to justify it by ignoring competent evidence in the record that suggests an

2  opposite result"); see Holohan, 246 F.3d at 1207-08 (9th Cir. 2001) (an ALJ cannot selectively rely

3  on some entries in plaintiff's records while ignoring others); see Garrison v. Colvin, 759 F.3d 995,

4  1017) (9th Cir. 2014) ("it is error for an ALJ to pick out a few isolated instances of improvement

5  over a period of months or years and to treat them as a basis for concluding a claimant is capable

6  of working"); see also Reddick, 157 F.3d at 724 (reviewing court must view the administrative

7  record as a whole, "weighing both the evidence that supports and the evidence that detracts from

8  the Commissioner's conclusion"); Day v. Weinberger, 522 F.2d 1154, 1146 (9th Cir. 1975) (court

9  cannot affirm the ALJ's conclusion simply by isolating a specific quantum of supporting evidence").

10

11      Based on the record as whole, this was not a specific, clear and convincing reason for

12  discounting plaintiff's subjective symptom testimony.

13

14      ### 3.      Activities of Daily Living

15      The ALJ found that plaintiff's reported activities of daily living were "generally inconsistent

16  with someone who is experiencing constant pain":

17      Records from Dr. Krell from November 2006 state [plaintiff] was doing home
        exercise and "goes to the gym 2 times per week where he performs aqua therapy
18      that has been taught to him in addition to other exercises in the water." He further
        reported that [plaintiff] was "hoping to return to work" and had made an appointment
19      for vocational rehabilitation. Although he experienced pain in his lower back there
        was "no leg radiation." Additionally, [plaintiff] reported his back pain had decreased
20      down to a level of 5 to 6 out of a 10 instead of 8 to 9/10 which was prior to the [2007
        hardware removal] lumbar surgery. On the function report, he stated that he was
21      able to cook, take a "10 minute" walk, take care of personal hygiene, perform light
        cleaning, drive, go outside daily, go out alone, shop in stores, by mail and by
22      computer and pay bills. Later in the function report [plaintiff] relates he can walk for
        20 minutes before having to sit down.
23

24  [AR at 600 (citations omitted).]

25      An ALJ may discredit testimony when plaintiff reports participation in everyday activities

26  indicating capacities that are transferable to a work setting. Molina, 674 F.3d at 1113. However,

27  "[e]ven where those activities suggest some difficulty functioning, they may be grounds for

28

1  discrediting [plaintiff]'s testimony to the extent that they contradict claims of a totally debilitating

2  impairment." Id. (citing Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1225 (9th Cir. 2010);

3  Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009)).

4       Plaintiff contends that the fact he attempted to improve his condition does not warrant

5  discrediting his subjective symptom testimony; the objective evidence cited to by the ALJ

6  demonstrates that the first fusion surgery was not successful; although the cited evidence may

7  demonstrate a temporary improvement, "his condition deteriorated over time and before the date

8  last insured"; the activities indicated in the function report do not "rise to the level of full time

9  activity at any level of exertion"; and plaintiff's aqua therapy and other exercise in 2006 was

10 recommended by Dr. Capen.  [JS at 23-24, 32.]

11      Although the ALJ generally and conclusorily stated that plaintiff's described daily activities

12 were "generally inconsistent with someone who is experiencing constant pain" [AR at 600], the

13 amount of involvement plaintiff described in these activities was minimal.  [See, e.g., AR at 121-28

14 (stating that he has difficulty with personal care tasks that involve bending; prepares sandwiches

15 and frozen dinners; performs "very light cleaning" for about half an hour, twice a week; shops once

16 a week for "about an hour"; is not able to sit for long periods of time; socializes with others twice

17 a month; can walk 15-20 minutes before resting; can sit about 45 minutes before having to stand

18 up; and can stand for about "25 minutes max"); 45-50.]  The ALJ does not explain how this level

19 of activity -- which reflects that plaintiff has difficulties in performing his daily activities -- is

20 inconsistent with plaintiff's subjective symptom testimony.  [AR at 22.]  Neither does he explain

21 how plaintiff's ability to do aerobic exercise in water constitutes either an activity transferable to

22 a work setting, or contradicts plaintiff's subjective symptom testimony.

23      The Court previously found that this same reasoning did not provide a specific, clear and

24 convincing reason to discount plaintiff's subjective symptom testimony [AR at 671], and that

25 reasoning fares no better now.

26 /

27 /

28

### 4.    Work History

In discounting plaintiff's subjective symptom testimony, the ALJ also stated the following:

> Although [plaintiff] has amended his alleged onset date of disability to December 2008, there is no evidence that he worked at all in 2004, 2005, 2006, 2007 or 2008. Dr. Krell reported that [plaintiff] was hoping to return to work and was making an appointment with vocational rehabilitation, however, there is little if any evidence that [plaintiff] tried to work.  In 2005 he reportedly was also considering work in a car dealership where he "can alternatively stand and sit."  Thus, one would question if [plaintiff's] impairments are the primary reason he was unemployed.

[AR at 600 (citations omitted).]

Plaintiff counters that although six months after his April 2005 surgery he made the statement to Dr. Krell that he was "considering working in a car dealership service department where he can alternately stand and sit" [AR at 236], and in November 2006 (six months before plaintiff's hardware removal surgery) Dr. Krell noted that vocational rehabilitation had not yet commenced [AR at 227], the record "clearly indicates that his condition deteriorated and rendered him unable to do so." [JS at 32.] Moreover, while plaintiff may have aspired to return to work that would permit a sit/stand option, his hope of achieving this goal is not proof that he was realistically capable of attaining that goal or that his subjective complaints of impairment lacked credibility. See Santos v. Astrue, 2013 WL 816480, at *5 (C.D. Cal. Mar. 1, 2013).  In light of the extensive medical record between 2004 and 2008, during which time Dr. Capen regularly completed orthopedic evaluations and progress reports documenting plaintiff's deteriorating condition, including physical examinations, x-ray examinations, referral for multiple MRIs, neurological testing, and pain management, administration of intramuscular injections, and his December 2008 opinion that plaintiff needed yet another surgical intervention [see e.g., AR at 181-88, 248-56, 259-60, 268-69, 272-73, 276-77, 280-91, 303-06, 311, 313-18, 320-39, 341-44, 355-95, 399-405, 406-15, 420-34, 451-86, 526-27, 529-31, 533-37], the ALJ's implicit conjecture that plaintiff's failure to work during those years reflected something other than plaintiff's medical condition is wholly unsupported.

This was not a specific, clear and convincing reason for discounting plaintiff's subjective symptom testimony.

### 5.    Conclusion

The Court finds the ALJ's credibility determination to be virtually indistinguishable from the credibility determination rejected by the Ninth Circuit in <u>Brown-Hunter</u>.  As in <u>Brown-Hunter</u>, the ALJ here "simply stated [his] non-credibility conclusion and then summarized the medical evidence supporting [his] RFC determination." <u>Brown-Hunter</u>, 806 F.3d at 494.  Although the ALJ here also reviewed plaintiff's daily activities, he did not identify the testimony he found not credible, and "link that testimony to the particular parts of the record" supporting his adverse determination.  <u>Id.</u>  The ALJ did not provide "the sort of explanation or the kind of 'specific reasons' we must have in order to review the ALJ's decision meaningfully, so that we may ensure that the claimant's testimony was not arbitrarily discredited," nor can the error be found harmless.   <u>Id.</u> (rejecting the Commissioner's argument that because the ALJ set out his RFC and summarized the evidence supporting his determination, the Court can infer that the ALJ rejected the plaintiff's testimony to the extent it conflicted with that medical evidence, because the ALJ "never identified *which* testimony [he] found not credible, and never explained *which* evidence contradicted that testimony") (citing <u>Treichler</u>, 775 F.3d at 1103, <u>Burrell</u> 775 F.3d at 1138).

## B.    MEDICAL OPINIONS

For the same reasons discussed above (<u>see</u> Discussion <u>supra</u> part V.A.2), and in the Court's 2014 Memorandum Opinion, the ALJ's 2015 Decision discounting the opinions of plaintiff's treating physician Dr. Capen, and his determination to give "great weight" to the medical source statements provided by the nonexamining medical consultant A. Lizarraras, M.D. [AR at 600-01], failed to resolve the deficiencies addressed by the Court in its 2014 Memorandum Opinion.  [AR at 659-66.]

## VI.

## <u>REMAND FOR PAYMENT OF BENEFITS</u>

Plaintiff argues that the Court should reverse the final decision of the Commissioner and

1   remand this matter for the immediate payment of benefits. [JS at 32.] He contends that the record

2   as a whole, including Dr. Capen's opinions, supports plaintiff's alleged level of disability.  [JS at

3   18, 32.]

4        As noted by the Ninth Circuit in Brown-Hunter, a remand for an immediate award of benefits

5   is appropriate only in rare circumstances.  Brown-Hunter, 805 F.3d at 495.  Before ordering that

6   remedy, three requirements must be met:  (1) the Court must conclude that the ALJ failed to

7   provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical

8   opinion (id. (citing Garrison, 759 F.3d at 1020)); (2) the Court must conclude that the record has

9   been fully developed and further administrative proceedings would serve no useful purpose (id.

10  (citing Treichler, 775 F.3d at 1105, for the proposition that this requirement will not be satisfied if

11  the  record  raises  crucial  questions  as  to  the  extent  of  a  claimant's  impairment  given

12  inconsistencies between his testimony and the medical evidence in the record, because these are

13  exactly the sort of issues that should be remanded to the agency for further proceedings)); and

14  (3) the Court must conclude that if the improperly discredited evidence were credited as true, the

15  ALJ would be required to find the claimant disabled on remand.  Id. (citing Garrison, 759 F.3d at

16  1021).  Even if all three requirements are met, the Court retains flexibility in determining the

17  appropriate remedy.  Id. (citation omitted).  For instance, the Court may still remand for further

18  proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in

19  fact, disabled within the meaning of the Social Security Act."  Id. (citing Garrison, 759 F.3d at

20  1021).

21       In this case, even after being given a second chance to properly consider the two issues

22  raised by plaintiff in this Court, the Commissioner has twice failed to provide legally sufficient

23  reasons for discounting plaintiff's subjective symptom testimony, and for giving little weight to the

24  opinions of his treating physician.  Thus, the first Brown-Hunter requirement is met.  Next, both

25  ALJs who considered these issues relied on plaintiff's hearing testimony and the record evidence

26  relating to the period prior to his date last insured (now almost seven years in the past) -- and both

27  failed to provide specific and legitimate reasons to discount the opinions of plaintiff's treating

28

physician, or to provide specific, clear and convincing reasons to discredit plaintiff's subjective symptom testimony. There would simply be nothing new to consider if the Court were to order yet another remand for consideration of these issues. Thus, the Court sees no purpose in returning the case to the Commissioner to make a third determination, based on the same evidence previously considered, as to whether the treating physician's opinions or plaintiff's subjective complaints should be credited or rejected. "Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication." Benecke, 379 F.3d at 595; see also Varney v. Sec'y of Health and Human Servs., 859 F.2d 1396, 1399 (9th Cir. 1988) ("Certainly there may exist valid grounds on which to discredit a claimant's pain testimony . . . . But if grounds for such a finding exist, it is both reasonable and desirable to require the ALJ to articulate them in the original decision.") (emphasis added) (citation omitted). Plaintiff has already waited more than six years for a disability determination. Benecke, 379 F.3d at 595 ("Remanding a disability claim for further proceedings can delay much needed income for claimants who are unable to work and are entitled to benefits, often subjecting them to tremendous financial difficulties while awaiting the outcome of their appeals and proceedings on remand.") (quotation marks and citation omitted). Under these circumstances, the Court is persuaded that "remanding for further administrative proceedings would serve no useful purpose and would unnecessarily extend [plaintiff's] long wait for benefits." Id. Thus, the second Brown-Hunter requirement is met. Finally, the VE at the 2012 Hearing testified that a claimant with the RFC and limitations determined by Dr. Capen in his 2011 report[9] would not be able to return to his past relevant work, and there would be no jobs available for that individual in the labor market. [AR at 698-97.] As these limitations also reflect plaintiff's subjective symptoms, if either the treating doctor's opinions or plaintiff's subjective symptom testimony -- or both -- are credited as

---

[9]   In his May 2011 medical source report, Dr. Capen found that plaintiff can lift no more than five pounds frequently or occasionally; is able to stand and walk less than two hours in an eight-hour day; is able to sit less than six hours in an eight-hour day and can sit a total of two hours in an eight-hour day; must alternate sitting and standing; can never climb, balance, stoop, kneel, crouch, and crawl; and should not work at unprotected heights, around dangerous fast-moving machinery, or extreme temperatures. [AR at 526-27.]

1    true, the ALJ would be required to find plaintiff disabled on remand and the third <u>Brown-Hunter</u>

2    requirement is also met.  <u>See also</u> <u>Peterson v. Colvin</u>, __ F. App'x __, 2016 WL 4410079 (9th Cir.

3    Aug. 19, 2016) (remanding for payment of benefits where the record is fully developed, the

4    evidence in the record does not "'cast[] into serious doubt' the claimant's claim to be disabled," and

5    the testimony of the VE establishes that when crediting the treating physician's opinion, the

6    claimant could not perform jobs existing in significant numbers in the national economy) (citations

7    omitted).

8        Based on the foregoing, the Court finds that this is one of those rare circumstances where

9    a remand for an immediate award of benefits is appropriate.

10

11                                                   **VII.**

12                                             **<u>CONCLUSION</u>**

13        **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the

14    decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for the

15    immediate payment of benefits, consistent with this Memorandum Opinion.

16        **IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the

17    Judgment herein on all parties or their counsel.

18        **This Memorandum Opinion and Order is not intended for publication, nor is it**

19    **intended to be included in or submitted to any online service such as Westlaw or Lexis.**

20

21    DATED:  September 19, 2016

22                                                   _____
                                                        PAUL L. ABRAMS
                                                        UNITED STATES MAGISTRATE JUDGE

23

24

25

26

27

28